# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4001

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Zachary Lon Zeigler, | * | |
| aka Zachary T. Zeigler, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 17, 2006
Filed:  September 18, 2006

_____

Before BYE, HANSEN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Zachary Zeigler pleaded guilty to five counts of use of another person's Social Security card in violation of 42 U.S.C. § 408(a)(7)(B). The district court[1] sentenced Zeigler to 24 months' imprisonment on each count to run concurrently, three years of supervised release, and a $500 special assessment. Zeigler appeals his sentence, arguing that it is unreasonable. For the reasons set forth below, we affirm.

_____

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

I. *Facts*

In 1995, Zeigler applied for and later received a Social Security number for his alleged son, Zachary T. Zeigler. Zeigler presented a Wyoming birth certificate with a birth date of January 21, 1995, as well as a certificate of baptism for the child when he applied in California. The government issued a Social Security number based on these fraudulent documents in the name of Zachary T. Zeigler. Zeigler repeatedly used the Social Security number obtained under this name and birth date in several states to obtain driver's licenses, apply for work, and open bank accounts. The use of this false number formed the basis for the instant five counts of conviction in South Dakota.

Prior to sentencing, the United States moved for an upward departure based on the inadequacy of Zeigler's criminal history. Zeigler's criminal history dated back 27 years and included 6 felony convictions, however, the Presentence Investigation Report ("PSR") listed Zeigler's criminal history as a category I due to the lapse of time between convictions.[2] At sentencing, the district court found that Zeigler's offense level was four, with a criminal history category I, resulting in a recommended sentencing range of zero to six months. However, the government requested at least 18 months' incarceration in its upward departure motion. Without explicitly ruling on the government's upward departure motion, the district court found that Zeigler's criminal history "completely" understated his criminal conduct.[3] Consequently, the

[2]According to the PSR, between 1978 and 1984, Zeigler was convicted of the following: forgery, fraudulent obtaining of aid for children, unauthorized use of food stamps, perjury, battery, misapplication of Indian tribal funds, and impersonation of an officer or employee of the United States. In 2004, Zeigler was convicted for disorderly conduct.

[3]The district court's Statement of Reasons reads as follows:

The Court imposed a sentence outside the advisory guideline range and considered the factors set forth in 18 U.S.C. § 3553(a). The defendant

district court sentenced Zeigler outside of the advisory Guidelines range to 24 months' imprisonment on each count to run concurrently, 3 years of supervised release, and a $500 special assessment.

## II. *Discussion*

Zeigler argues that his sentence is unreasonable given the totality of the facts and circumstances of his case. Zeigler points out that a 22-year gap separated his last conviction[4] and his next oldest conviction. Zeigler claims that the sentence imposed by the district court is four times that recommended by the Guidelines, represents an upward departure of nine levels, 18 months, or 400%, and that significant disparity exists between the Guidelines range and the actual sentence imposed. Moreover, the sentence exceeds the government's recommendation by six months. Additionally,

> had a history of fraudulent conduct and "lying is a way of life" for him. In 1984 he was convicted of Misapplication of Indian Tribal Funds in Reno, NV, and he served six months custody. The aforementioned offense involved his fraudulently collecting travel reimbursements. Later in 1984, the defendant was convicted of Impersonation of an Officer or Employee of the United States, and he served less than one year in custody. Additionally, when the defendant was arrested in Lawrence County, SD, in 2004, for a misdemeanor offense, he used the same fraudulent Social Security number as the one in the instant offense.
>
> The Court found the defendant's criminal history category of I significantly understated his prior criminal conduct. The Court found a sentence outside the advisory guideline range was justified pursuant to 18 U.S.C. § 3553(a)(1), based upon the nature and circumstances of the offense and the history and characteristics of the defendant. The Court also found the sentence imposed needed to afford adequate deterrence for the criminal conduct pursuant to 18 U.S.C. § 3553(a)(2)(B). Based upon the Court's findings, the Court sentenced the defendant to 24 months custody on each of the five counts, all to run concurrently.

[4]Zeigler was convicted of disorderly conduct in 2004, which is a class II misdemeanor under South Dakota law.

Zeigler asserts that even if the district court placed him in criminal history category VI, his sentence is still twice the recommended 12 months' imprisonment under that calculation. Zeigler submits that the district court's sentence treats him differently than similarly situated defendants contrary to the purpose of the Guidelines. Zeigler thus urges that the sentence as imposed be found unreasonable and requests that we remand his case to the district court for resentencing.

In response, the government points out that the district court considered the Guidelines as well as the factors outlined in § 3553(a) in fashioning an appropriate sentence. Specifically, the district court made explicit findings on the inadequacy of Zeigler's criminal history, which justify sentencing Zeigler to 24 months' imprisonment on each count to run concurrently.

We review the district court's interpretation and application of the Guidelines de novo and its findings of fact for clear error. *United States v. Mathijssen*, 406 F.3d 496, 498 (8th Cir. 2005). "We will review a district court's decision to depart from the appropriate guidelines range for abuse of discretion." *United States v. Mashek*, 406 F.3d 1012, 1017 (8th Cir. 2005). Sentences as a whole are reviewed for unreasonableness as measured against the factors set forth in 18 U.S.C. § 3553(a). *Id.* at 1015–16. "To make [a] reasonableness determination, we ask whether the district court abused its discretion." *United States v. Pizano*, 403 F.3d 991 (8th Cir. 2005). "[A]n abuse of discretion may occur when (1) a court fails to consider a relevant factor that should have received significant weight; (2) a court gives significant weight to an improper or irrelevant factor; or (3) a court considers only the appropriate factors but in weighing those factors commits a 'clear error of judgment.'" *United States v. Haack*, 403 F.3d 997, 1004 (8th Cir. 2005) (citing *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1984)).

After *Booker*, "the sentencing court must first determine the appropriate guidelines sentencing range." *Id.* at 1002–03.

Once the applicable range is determined, the court should then decide if a traditional departure is appropriate under Part K and/or § 4A1.3 of the Federal Sentencing Guidelines. Those considerations will result in a 'guidelines sentence.' Once the guidelines sentence is determined, the court shall then consider all other factors set forth in § 3553(a) to determine whether to impose a sentence under the guidelines or a non-guidelines sentence.

*Id*. at 1003.

Here, there is no dispute that the district court determined the appropriate Guidelines sentencing range to be zero to six months' imprisonment. The district court then considered the § 3553(a) factors to determine whether a "sentence outside the advisory guideline range" was warranted for Zeigler's understated criminal history. (Statement of Reasons 3). Thereafter, the district court sentenced Zeigler to 24 months' imprisonment, finding that the defendant's criminal history category I significantly understated his prior criminal conduct.

"[A]n upward departure may be warranted when 'reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes.'" *United States v. Hacker*, 450 F.3d 808, 811–12 (8th Cir. 2006) (citing U.S.S.G. § 4A1.3(a)(1)). Although the 24-month sentence imposed was substantially greater than the advisory Guidelines range found by the district court, under the circumstances of this case, we find that Zeigler's sentence was reasonable. *United States v. Lyons*, 450 F.3d 834, 836 (8th Cir. 2006). The district court considered the relevant § 3553(a) factors, including the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to afford adequate deterrence for the criminal conduct. Specifically, the district court found that "lying is a way of life" for the defendant, citing his numerous convictions for fraudulent behavior. In fact, between 1978 and 1984, Zeigler was convicted of the

following: forgery, fraudulent obtaining of aid for children, unauthorized use of food stamps, perjury, battery, misapplication of Indian tribal funds, and impersonation of an officer or employee of the United States. Further, the district court noted that when the defendant was arrested in Lawrence County, South Dakota, in 2004, for a misdemeanor offense, he used the same fraudulent Social Security number as the one in the instant offense. "These are appropriate factors to consider in deciding whether to vary from the guideline range, and the court did not neglect factors that should have been given significant weight." *Id*. Because we find that the district court's upward variance was supported by the facts and circumstances surrounding this case, we conclude that Zeigler's sentence is reasonable.

We note that it is unclear whether the district court imposed an upward departure or an upward variance. The district court, in the sentencing hearing, stated that the 24-month sentence "constitutes an upward departure from the recommended guideline range." Sent. Tr. 26. However, the district court did not engage in a traditional departure analysis as contemplated by *Haack*. "Although the district court erred, the error was harmless." *United States v. Sitting Bear*, 436 F.3d 929, 935 (8th Cir. 2006) (holding that the district court's failure to consider an upward departure under the *Haack* analysis was harmless error). Zeigler "failed to establish that his ultimate sentence is unreasonable, i.e., that the district court abused its discretion . . . ." *Id*. Moreover, the considerations made by the district court "could have justified a traditional upward departure under the guidelines, *see* USSG § 4A1.3(a) . . . ." *Lyons*, 450 F.3d at 837. Accordingly, we affirm the judgment of the district court.

III. *Conclusion*

For the reasons stated, we affirm Zeigler's sentence.

HANSEN, Circuit Judge, concurring in the judgment.

I concur in the judgment of the court because the district court's failure to rule on the Government's departure motion was harmless error, and I agree that Zeigler's ultimate 24-month sentence is reasonable given the nature and circumstances of his offenses and Zeigler's history and characteristics as discussed by the court, supra at 6. I write separately to clarify the difference between departures from an otherwise applicable Guidelines range (in order to arrive at a correctly calculated advisory Guidelines sentencing range) and the imposition of a post-Booker non-Guidelines sentence. I also write to reinforce the district court's obligation to rule on departure motions in its quest for an accurate advisory Guidelines sentence.

The court's opinion properly quotes the three-step analysis for reviewing a district court sentence as set out in United States v. Haack, 403 F.3d 997, 1003 (8th Cir.), cert. denied, 126 S. Ct. 276 (2005). (Supra at 4-5.) In performing its analysis, however, I respectfully conclude that it conflates the difference between our review of a district court's application of a departure under the Guidelines and our review of the reasonableness of its ultimate sentence. Without first discussing whether the district court properly calculated an advisory Guidelines sentence (which includes the proper application of departures at step two), the court's opinion jumps right to the analysis of whether the ultimate sentence was reasonable (step three). It further fails to recognize the differences between departures and non-Guidelines sentences by relying on United States v. Hacker, 450 F.3d 808 (8th Cir. 2006), a departure case, to conclude that Zeigler's non-Guidelines sentence was reasonable under 18 U.S.C. § 3553(a). (Supra at 5.) When the court does address the departure issue, it again conflates the separate inquiries by following its conclusion that the district court's failure to address the Government's request for a departure was harmless error with a statement that Zeigler failed to establish that his ultimate sentence was unreasonable. (Id. at 6.)

As we have explained many times since Booker, the district court must determine a "Guidelines sentence" before applying the § 3553(a) factors to arrive at a final sentence. The Guidelines sentence includes a calculation of the appropriate advisory Guidelines range (step one), as well as a determination of whether any departures apply (step two). Once the district court determines the advisory Guidelines sentencing range (as modified by any departure determination it may make), it then considers the § 3553(a) factors in deciding whether to sentence the defendant within the identified advisory Guidelines range or to a non-Guidelines sentence (step three). Haack, 403 F.3d at 1003; see also United States v. Ture, 450 F.3d 352, 356 (8th Cir. 2006) (applying Haack methodology); United States v. Sitting Bear, 436 F.3d 929, 934-35 (8th Cir. 2006) (same); United States v. Denton, 434 F.3d 1104, 1114 (8th Cir. 2006) (same).

Generally, if the district court errs in applying the Guidelines at step one or fails to consider a requested departure at step two, we cannot conduct a reasonableness review because the district court's critical starting point, a correctly determined advisory Guidelines range, may be flawed. See United States v. Smith, 450 F.3d 856, 862 (8th Cir. 2006) (remanding for resentencing where the district court failed to rule on the Government's request for an obstruction of justice enhancement); United States v. Mashek, 406 F.3d 1012, 1015 (8th Cir. 2005) ("The duty to remand all sentences imposed as a result of an incorrect application of the guidelines exists independently of whether we would find the resulting sentence reasonable under the standard of review announced in Booker."). However, we have continued to apply prudential doctrines, including harmless error review, to a district court's failure to properly apply the Guidelines, including departures. Sitting Bear, 436 F.3d at 935; Mashek, 406 F.3d at 1017. In Mashek, the district court's failure to properly apply a downward adjustment was not harmless to the defendant's appeal of her sentence. On the other hand, the district court's failure to consider an upward departure in Sitting Bear was harmless as to the defendant, who was "'deprived merely of the opportunity to receive

an upward departure and, perhaps, a longer sentence.'" <u>Sitting Bear</u>, 436 F.3d at 935 (quoting <u>United States v. Long Soldier</u>, 431 F.3d 1120, 1122 (8th Cir. 2005)).

The district court's failure to rule on the Government's motion for an upward departure in this case is similar to the failure in <u>Sitting Bear</u> and was harmless to Zeigler, the appellant here.  Had the district court granted the Government's motion, our reasonableness review would have involved comparing the imposed 24-month sentence to a higher advisory Guidelines range than the 0 to 6-month range arrived at by the district court without ruling on the departure motion, a much more difficult task for Zeigler.  <u>See</u> <u>United States v. Gall</u>, 446 F.3d 884, 889 (8th Cir. 2006) ("How compelling that justification [for a non-Guidelines sentence]  must be is proportional to the extent of the difference between the advisory range and the sentence imposed." (internal marks omitted)).

It is my view that we must be careful not to commingle the review of a district court's failure to grant a departure with the § 3553(a) reasonableness review.  Because an ultimate sentence is reasonable does not, in and of itself, make the failure to rule on a departure motion harmless.  Departures are based on specific sections of Chapter 5, Part K of the U.S. Sentencing Guidelines (USSG) Manual and USSG § 4A1.3. Reasonableness of the ultimate sentence is based on the statutory elements contained in § 3553(a).  While the two may sometimes overlap, circuit courts, as well as district courts, would do well not to make post-<u>Booker</u> sentencing any more confusing than necessary by conflating the two distinct analyses. <u>See</u> Nancy J. King, *Reasonableness Review After Booker*, 43 Houston L. Rev. 325, 327 (2006) ("[R]ather than skipping over allegedly faulty assumptions or applications and heading straight to the reasonableness of the sentence imposed, appellate courts must first sort out the probability that any error the judge made in calculating the guidelines range and permissible departures affected the sentence that was selected.").

Because the error was harmless, and the 24-month non-Guidelines sentence is more than reasonable, I concur in the judgment of the court.

BYE, Circuit Judge, concurring.

Because I believe we should give "deference to the broad discretion visited upon sentencing courts under the now-advisory guideline system," United States v. McDonald, __ F.3d __, No. 05-1617, 2006 WL 2528580, at *7 (8th Cir. Sept. 5, 2006) (Bye, J., dissenting), I concur in affirming Zachary Zeigler's sentence. I feel obliged to write separately, however, to reiterate a point I made in McDonald about our court's tendency to affirm sentences above the advisory guideline range and to reverse sentences imposed below the guideline range. See id. at *10 (listing the upward departures which this court has affirmed as well as the downward departures it has reversed).

In upward departure cases, we have focused in part upon the district court's lack of an extended discussion of the § 3553(a) factors as a justification for reversing and remanding a case to the district court. See, e.g., United States v. Myers, 439 F.3d 415, 419 (8th Cir. 2006) (remanding "for imposition of sentence following more explicit and thorough consideration of all factors enumerated in section 3553(a)" where district court did not do so in the first instance). In this case, the district court only perfunctorily indicated it had "considered" the § 3553(a) factors. If we pretend, for a moment, this case were one in which the guidelines called for a sentence of twenty-four months at the low end of the advisory range, and the district court had departed *downward* 400% to six months, with the same sparse comments about consideration of the § 3553(a) factors, I seriously doubt the district court's decision would have survived our appellate review.

Thus, although I concur in the judgment because I believe the sentence imposed by the able district court judge is reasonable, I once again call for this court to take a

critical look at the disparity in our treatment of upward and downward departure cases.

_____