# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 09-3267

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Velma Mireles, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: April 13, 2010
Filed: August 20, 2010

———————

Before BYE, BEAM and GRUENDER, Circuit Judges.

———————

GRUENDER, Circuit Judge.

A federal grand jury returned an indictment charging Velma Mireles with one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i). Pursuant to a plea agreement, the Government agreed to move to dismiss the indictment, and Mireles agreed to waive indictment and plead guilty to one count of misprision of a felony, a violation of 18 U.S.C. § 4. The district court[1]

———————————

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

sentenced Mireles to 18 months' imprisonment and one year of supervised release. Mireles appeals her sentence.

## I.     BACKGROUND

In January 2008, Mireles agreed to transport the cash proceeds of illegal drug sales from Decatur, Alabama, to Rio Grande City, Texas.  On January 29, 2008, Mireles left her home in San Antonio, Texas, and drove with Rene Rodriguez to Decatur, Alabama.  Mireles picked up the drug money in a motel room in Decatur and concealed the cash in the waistband of her pantyhose.  She and Rodriguez then began driving to Rio Grande City.

On February 1, 2008, Arkansas State Police Corporal Vic Coleman stopped Rodriguez and Mireles near Lonoke, Arkansas, for speeding.  Corporal Coleman searched the vehicle.  During the search, he noticed that Mireles appeared to be hiding something under her clothing.  Corporal Coleman frisked Mireles and discovered that she was concealing several bundles of cash, totaling $29,920.  Mireles admitted that she knew the money was drug proceeds and that she had been promised $2,000 as payment for transporting it to Rio Grande City.

Mireles was indicted on one count of conspiracy to commit money laundering. Based on a plea agreement with the Government, Mireles instead pled guilty to a superseding information charging her with one count of misprision of a felony.  The Presentence Investigation Report (PSR) calculated an advisory sentencing guidelines range of 0 to 6 months' imprisonment.  The district court adopted the PSR but concluded that Mireles's "criminal history is not adequately represented and that her guideline [range] does not adequately reflect the seriousness of her conduct."  The district court sentenced Mireles to 18 months' imprisonment and one year of supervised release.

## II. DISCUSSION

Mireles first argues that the district court procedurally erred by failing to consider a traditional guidelines departure before imposing a sentence outside the guidelines range. In determining an appropriate sentence, "the district court ordinarily should determine first the appropriate guideline range, then decide if the guidelines permit a traditional departure, and finally determine whether the § 3553(a) factors justify a variance from this 'guidelines sentence.'" *United States v. Miller*, 479 F.3d 984, 986 (8th Cir. 2007) (citing *United States v. Haack*, 403 F.3d 997, 1002-03 (8th Cir. 2005)).[2] Mireles concedes that the district court properly calculated the advisory guidelines range but argues that the court failed to determine whether the guidelines permitted a traditional departure before sentencing her to 18 months' imprisonment.

We addressed a similar allegation of procedural error in *United States v. Maurstad*, 454 F.3d 787 (8th Cir. 2006). The district court characterized Maurstad's sentence as one that "used to be called [an] upward departure," but it "did not explicitly refer to the Guidelines departure provisions." *Id.* at 790. Thus, it was "unclear whether the district court intended to impose an upward departure under the Guidelines or an upward variance outside of the Guidelines." *Id.* While reiterating that "departures under the Guidelines should still be considered after *Booker*," we concluded that the district court's "failure to explicitly consider a departure under the Guidelines represents clear but harmless error" because "the same considerations that render the upward variance reasonable could have also justified an upward departure under the Guidelines." *Id.*

---

[2]"'Departure' is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines." *Irizarry v. United States*, 553 U.S. 708, 128 S. Ct. 2198, 2202 (2008). A variance, on the other hand, is a "non-Guidelines sentence[] based on the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Solis-Bermudez*, 501 F.3d 882, 884 (8th Cir. 2007).

Similarly, in *United States v. Zeigler*, 463 F.3d 814 (8th Cir. 2006), we observed that it was "unclear whether the district court imposed an upward departure or an upward variance," because "the district court did not engage in a traditional departure analysis as contemplated by *Haack*," *id.* at 818. We held that this error was also harmless, in part because "the considerations made by the district court 'could have justified a traditional upward departure under the guidelines.'" *Id.* (quoting *United States v. Lyons*, 450 F.3d 834, 837 (8th Cir. 2006)). *But cf. United States v. Washington*, 515 F.3d 861, 866-67 (8th Cir. 2008) (noting that the district court "described its sentence as a variance or upward departure . . . and drew no distinctions between the two terms" but concluding that the district court "committed no significant procedural error" because the court "appropriately considered [and explained] the relevant factors of § 3553(a)" (citation and internal quotation marks omitted)).

In *Maurstad* and *Zeigler*, we applied the harmless error standard, apparently because the alleged errors had been preserved. Here, however, Mireles failed to raise any objection to the alleged procedural error before the district court, so our review is for plain error. *See United States v. Burnette*, 518 F.3d 942, 946 (8th Cir. 2008) (citing *United States v. Pirani*, 406 F.3d 543, 550 (8th Cir. 2005) (en banc)). "Under plain error review, the defendant must show: (1) an error; (2) that is plain; and (3) that affects substantial rights." *United States v. Bain*, 586 F.3d 634, 640 (8th Cir. 2009) (per curiam) (quoting *United States v. Vaughn*, 519 F.3d 802, 804 (8th Cir. 2008)), *petition for cert. filed*, ---- U.S.L.W. ---- (U.S. Apr. 13, 2010) (No. 09-1242). "A plain error will not be corrected unless (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)). "An error affects a substantial right if it is prejudicial." *Id.* (citing *Olano*, 507 U.S. at 734). "A sentencing error is prejudicial if there is a reasonable probability the defendant would have received a lighter sentence but for the error." *Id.* (citing *Pirani*, 406 F.3d at 552).

Mireles acknowledges that "an upward departure may be warranted" under the Guidelines when "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes . . . ." *See* U.S.S.G. § 4A1.3(a)   But Mireles contends that she would have received a more favorable sentence if the district court had engaged in a traditional departure analysis under § 4A1.3(a).

To determine the extent of a departure under § 4A1.3(a)(1), the district court "first must proceed along the criminal history axis of the sentencing matrix, comparing the defendant's criminal history with the criminal histories of other offenders in each category." *United States v. Walking Eagle*, 553 F.3d 654, 657 (8th Cir. 2009) (quoting *United States v. Day*, 998 F.2d 622, 625 (8th Cir. 1993)).  "If the district court reaches Category VI, which is the highest criminal history category, but determines 'the Guidelines range is still inadequate, it may impose a reasonable sentence above the Category VI range.'" *Id.* (quoting *Day*, 998 F.2d at 625).  At that point, "the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." U.S.S.G. § 4A1.3(a)(4)(B).

Here, the district court calculated Mireles's advisory guidelines range of 0 to 6 months based on an offense level of 2 and a criminal history category of III.  To reach a sentence of 18 months under the guidelines, the district court would have needed to determine first that Mireles, notwithstanding her four criminal history points, belonged in criminal history category VI, *see id*. § 4A1.3(a)(4)(A).  Such a finding would have resulted in a guidelines range of 1 to 7 months, so the district court also would have needed to move down the sentencing table from offense level 2 to offense level 6 before a sentence of 18 months' imprisonment would qualify as a departure under § 4A1.3(a).

Mireles argues that the district court would not have imposed such an "egregious" departure if it had utilized the appropriate departure procedure under § 4A1.3(a), but she points to no evidence supporting this speculative contention, and we find none. This failure to demonstrate prejudice is fatal to Mireles's claim. *See United States v. Chauncey*, 420 F.3d 864, 878 (8th Cir. 2005) ("[W]here the effect of the error on the result in the district court is uncertain or indeterminate—where we would have to speculate—the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error." (alteration in original) (quoting *Pirani*, 406 F.3d at 553)).

Even if this issue had been preserved, we would conclude that any error was harmless. The district court specifically found that "[Mireles's] criminal history is not adequately represented" and provided support for its finding. Noting that Mireles had four prior convictions for offenses related to drug trafficking, the district court stated at sentencing that "it is very seldom when we see someone who has been in drug trafficking for as many years or has as many convictions as [Mireles does] over that time span." The district court also observed that Mireles had only received criminal history points for two of her prior convictions and expressed concern about Mireles's recidivist tendencies, even to the point of lamenting that "[s]he has been at this since 1977."

Based on the factors identified by the district court, we are satisfied that the district court would have been justified in imposing an 18-month sentence as a departure under § 4A1.3(a). *See Zeigler*, 463 F.3d 818; *Maurstad*, 454 F.3d at 790. At a minimum, it is clear that Mireles has not shown "a reasonable probability [that she] would have received a lighter sentence but for the error," *see Bain*, 586 F.3d at

640 (citing *Pirani*, 406 F.3d at 552). Thus, we conclude that Mireles has failed to establish reversible plain error.[3]

Finally, Mireles argues that the district court improperly based its sentence on a finding that she committed "a drug trafficking offense" when, in fact, she had been convicted only of misprision of a felony. Again, our review is for plain error because Mireles failed to raise this issue before the district court. *See Burnette*, 518 F.3d at 946. Contrary to Mireles's assertion, the district court did not specifically find that Mireles committed "a drug trafficking offense." Rather, the court found that Mireles's conduct was related to drug trafficking. The court stated that "[d]rug trafficking is an extremely serious offense Ms. Mireles has been involved in on more than one occasion," that Mireles "has been involved with *this type of activity* over the years," and that "[s]he has been at this since 1977." (Emphasis added.) The PSR provided ample factual support for these findings. In addition to detailing Mireles's prior convictions, the PSR stated that Mireles admitted to the officer who arrested her that

---

[3]Based on the district court's statement that Mireles's "criminal history is not adequately represented and that her guideline [range] does not adequately reflect the seriousness of her conduct," we conclude that the court also could have departed under U.S.S.G. § 5K2.21, which allows the court to depart upward "to reflect the actual seriousness of the offense based on conduct . . . underlying a charge dismissed . . . or underlying a potential charge not pursued . . . ." The district court may depart upward under § 5K2.21 if the underlying conduct "did not enter into the determination of the applicable guideline range," *see* § 5K2.21, and if the conduct is established by a preponderance of the evidence, *see United States v. Bates*, 561 F.3d 754, 756 (8th Cir. 2009). Mireles does not argue that the court based its calculation of her advisory guidelines sentencing range on the conduct underlying the dismissed money laundering charge. Furthermore, Mireles admitted when she was arrested that she was transporting "drug proceeds." Thus, we conclude that the district court would have been justified under § 5K2.21 in departing to 18 months to reflect adequately the seriousness of Mireles's conduct, i.e., her knowing transportation of the cash proceeds of illegal drug transactions, *cf. Smalley v. Ashcroft*, 354 F.3d 332, 339 (5th Cir. 2003) (observing that "[m]oney laundering provides drug dealers with the means to carry on their unlawful drug trade").

she was transporting "drug proceeds." Mireles did not object to the PSR, and we have "repeatedly held 'that unless a defendant objects to a specific factual allegation contained in the PSR, the court may accept that fact as true for sentencing purposes.'" *United States v. Oaks*, 606 F.3d 530, 541 (8th Cir. 2010) (quoting *United States v. Moser*, 168 F.3d 1130, 1132 (8th Cir. 1999)).

In finding that Mireles's knowing transportation of drug proceeds was the latest in a decades-long string of offenses related to drug trafficking, the district court employed a common understanding of the term "drug trafficking." We likewise would consider transporting the cash proceeds of illegal drug transactions to be related to drug trafficking. *See Smalley*, 354 F.3d at 339. Accordingly, we find no error, plain or otherwise, in the district court's reliance on this factor in sentencing Mireles.[4]

## III.   CONCLUSION

For the foregoing reasons, we affirm the sentence imposed by the district court.

BYE, Circuit Judge, dissenting.

I would vacate Mireles's sentence and remand to the district court for resentencing because the district court committed reversible error by not following the correct departure procedure and imposing an extreme upward departure of eighteen

---

[4]Mireles nevertheless argues that "the mere fact that the money being laundered was drug money" does not establish by a preponderance of the evidence that she committed "a drug trafficking offense." In making this argument, Mireles relies on the definition of "drug trafficking offense" in the application notes of U.S.S.G. § 2L1.2(b)(1), the sentencing guideline applicable to the offense of unlawfully entering or remaining in the United States. The district court was not, of course, bound by the definition of "drug trafficking offense" in a section of the guidelines that did not apply to Mireles's offense.

months' imprisonment from the Guidelines range of zero to six months. I therefore respectfully dissent.

Generally, we review a district court's decision to depart upward for an abuse of discretion, and we review the extent of the departure for reasonableness. United States v. Ruvalcava-Perez, 561 F.3d 883, 886 (8th Cir. 2009). In this case, Mireles concedes she did not object to the district court's upward departure, and therefore our review is for plain error. United States v. Walking Eagle, 553 F.3d 654, 657 (8th Cir. 2009). To establish plain error, Mireles must prove (1) there was error, (2) the error was plain, and (3) the error affected her substantial rights. United States v. Molnar, 590 F.3d 912, 915 (8th Cir. 2010). An error affects a substantial right if it is prejudicial, or in other words, if Mireles proves a reasonable probability that she would have received a lighter sentence but for the error. Id.

In this case, there is no dispute the district court committed plain error by failing to follow the three-step sentencing process contemplated by United States v. Haack, 403 F.3d 997, 1002-1003 (8th Cir. 2005), when it failed to consider a traditional Guidelines departure before it imposed a sentence outside of the Guidelines range of zero to six months. See United States v. Maurstad, 454 F.3d 787, 790 (8th Cir. 2006) (concluding the failure to explicitly consider a departure under the Guidelines represented clear error); United States v. Zeigler, 463 F.3d 814, 818 (8th Cir. 2006); United States v. Sitting Bear, 436 F.3d 929, 935 (8th Cir. 2006). See also United States v. Lovelace, 565 F.3d 1080, 1092 (8th Cir. 2009) ("'Plain' is synonymous with 'clear' or, equivalently, 'obvious.' A plain error is one that is clear or obvious under current law.") (citation omitted). Rather, the majority holds Mireles is unable to demonstrate prejudice because she cannot show a reasonable probability that she would have received a lighter sentence but for the error.

In reaching its conclusion, the majority analogizes to Maurstad and Zeigler, two cases in which this court noted it was unclear whether the district court imposed an

upward departure or an upward variance.  Maurstad, 454 F.3d at 790; Zeigler, 463 F.3d at 818.  We concluded this error was harmless in each case because the considerations made by the district court in imposing its sentence could have also justified a traditional upward departure under the Guidelines.  Maurstad, 454 F.3d at 790, Zeigler, 463 F.3d at 818.

Unlike Maurstad and Zeigler, I do not believe the extreme upward departure imposed *sua sponte* by the district court here would have been justified under the proper departure procedure.  An examination of the proper procedure, as discussed below, demonstrates why Mireles is able to demonstrate prejudice and distinguish her case from Maurstad and Zeigler.

As the majority notes, to determine the extent of a departure under § 4A1.3(a)(1), the district court "first must proceed along the criminal history axis of the sentencing matrix, comparing the defendant's criminal history with the criminal histories of other offenders in each higher category."[5]  Walking Eagle, 553 F.3d at 657 (citation omitted).  If the district court reaches Category VI, the highest criminal history category, and it wishes to depart further, it should then move incrementally down the sentencing table to the next higher offense level until it finds the appropriate Guidelines range.  Ruvalcava-Perez, 561 F.3d at 887 (citing § 4A1.3(a)(4)(B)).  While it is clear the district court need not engage in a "ritualistic exercise . . . mechanically discuss[ing] each criminal history category it rejects en route to the category that it

_____

[5]I note the district court did not explicitly refer to any Guidelines departure provisions, such as U.S.S.G. § 4A1.3(a)(1), which provides for an upward departure if "the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes."  Ruvalcava-Perez, 561 F.3d at 886.  This court has previously determined a district court's failure to explain the relative weight of factors it relies upon in departing upward and failing to cite a Guidelines enhancement as a basis for departure may constitute reversible procedural error.  United States v. Kemp, 530 F.3d 719, 723 (8th Cir. 2008).

selects," the court "must provide sufficient indicia of why the intermediary categories are inappropriate." United States v. Azure, 536 F.3d 922, 931-32 (8th Cir. 2008). Cf. Walking Eagle, 553 F.3d at 658 (holding a district court's failure to specifically mention each intermediate criminal history category was not dispositive where its findings were adequate to explain the departure).

In this case, the district court was clearly concerned with Mireles's unscored criminal history, which consisted of a possession with intent to distribute marijuana conviction in 1977 and a conspiracy to possess with intent to distribute marijuana conviction in 1984. Even if these offenses were taken into account, however, Mireles's criminal history score would have added up to eight points instead of four points, moving her from Category III to Category IV. See United States v. Gonzalez, 573 F.3d 600, 606 (8th Cir. 2009) (noting the district court's consideration of the defendant's unscored convictions was reasonable). While I certainly do not suggest district courts are limited to only including points from unscored convictions in departing upward, I believe this scenario helps demonstrate the extreme departure imposed by the district court because, despite the increase in criminal history points, Mireles's Guidelines range would be nowhere near the eighteen month sentence imposed by the district court; instead, it would have remained at zero to six months. By contrast, the defendant in Maurstad had fifteen more criminal history points than necessary to reach Category VI, leading the district court in that case to justifiably conclude the Guidelines substantially underrepresented the defendant's criminal history. 454 F.3d at 789.

In order to find the axis including an eighteen month sentence, the district court would have had to proceed two more categories over to the highest criminal history category (after already including the unscored convictions), and then it would have had to increase the offense level by four, staying in the highest criminal history category. In other words, the upward departure consisted of a seven-level increase, which tripled the high end of Mireles's Guidelines range. This significant increase

was done after the government did not object to a sentence of probation. Clearly, such a departure is substantial, requiring a more significant justification from the district court in support. See United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) ("[A] major departure should be supported by a more significant justification than a minor one.'"); Azure, 536 F.3d at 932 ("Failing to adequately explain an upward departure is a significant procedural error."); United States v. Wiley, 509 F.3d 474, 478 (8th Cir. 2007) (concluding a six-level variance adopted by the district court was substantial, requiring a proportionately compelling justification).

In light of the improper departure procedure, I do not believe the district court's findings were sufficient to support the massive increase in Mireles's sentence, particularly considering her two unscored offenses are twenty-six and thirty-three years old, respectively. Cf. United States v. Jones, 596 F.3d 881, 883 (8th Cir. 2010) (concluding the district court did not err in imposing a *two-level* departure for a defendant who amassed nineteen criminal history points in just ten years, including many aggressive and violent felonies).

To be sure, Mireles does not contend an upward departure under § 4A1.3(a)(1) would be completely unfounded; rather, she asserts it is unlikely such a grave departure based on her criminal history is legitimate, leading to the conclusion she would have received a more favorable sentence under the traditional departure procedure detailed above. I agree. We have continually reinforced that a "reasonable probability" does not mean certainty, nor does it even equate to proof by a preponderance of the evidence. United States v. Bain, 586 F.3d 634, 640 (8th Cir. 2009); United States v. Burns, 432 F.3d 856, 865 (8th Cir. 2005); United States v. Jimenez-Gutierrez, 425 F.3d 1123, 1126 (8th Cir. 2005). "In light of the entire record, the reviewing court must be satisfied that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding." Bain, 586 F.3d at 640 (internal quotation marks and citation omitted). I believe the record and our precedent leaves open a reasonable probability of a different outcome had the district

court conducted the proper departure procedure.  Thus, I would remand for the district court to engage in the three-step sentencing process that we have continued to urge district courts to utilize in order to ensure meaningful appellate review.  <u>United States v. Washington</u>, 515 F.3d 861, 865-66 (8th Cir. 2008).

_____